### NOHRDEN v. NORTHEASTERN R. R. CO.

1. EVIDENCE—BURDEN OF PROOF—RAILROADS—NEGLIGENT KILLING.— The burden of showing that a person killed at a crossing knew of the approach of a railroad train not giving statutory signals is on railroad. *Barber* v. *R. R.,* 34 S. C., 444, *distinguished from this.*

2. CHARGE—NEGLIGENT KILLING—GROSS NEGLIGENCE.—A request to charge as to the burden of proof of notice of an approaching train is not complete without a clause covering the proposition of gross negligence set out in statute as a defense to such killing.

3. IBID.—NEW TRIAL.—The Judge said nothing in his charge violative of the rule that a new trial ordered by this Court is a trial *de novo,* and the jury should not in any manner be influenced by the action of the former jury.

4. IBID.—REQUEST.—Party desiring other definition of terms of statute than that put on it by Court heretofore, must so request.

5. AN EXCEPTION charging error in defining statute must state the grounds of alleged error.

6. NEGLIGENT KILLING—DAMAGES—NEGLIGENCE—LORD CAMPBELL'S ACT.—Under our statute granting right of action to the heirs at law of a person killed by negligence of another, the jury may consider the wounded feelings of the beneficiaries in estimating damages. *Petrie* v. *R. R., 29* S. C., 317, *distinguished from this.*

7. CHARGE—REQUEST—CITY ORDINANCE.—Law applicable to case in defining effect of city ordinance sufficiently declared in absence of further request.

Before GAGE, J., Charleston, December, 1899.    Affirmed.

Action for damages for negligent killing by William C. Nohrden, administrator of Harold William Nohrden, against Northeastern Railroad Co. From judgment for plaintiff, defendant appeals. So much of the charge as is questioned by the exceptions is as follows:

Gentlemen of the jury: Before I proceed to deliver to you my charge in this case, I will direct my attention to the requests to charge made, first by the plaintiff, and secondly by the defendant. And that means this: The plaintiff's attorneys, that is, the attorneys for Nohrden, have their view of the law of the case, and the defendant's attorneys, that is, the attorneys for the railroad company, have their view of the law, and they have a right under the law to request me to state their views to you and to direct you to find according to their view of the law. So that if I fail to state the view of the law entertained by these gentlemen, they would thereafter have a remedy, to wit: by appeal to the Supreme Court, and have the judgment reversed and a new trial ordered, and have the case tried according to their view of the law. That has been the case in this case once heretofore. This action was tried before a former Circuit Judge, and he directed the jury on that trial his view of the law, and that view was contrary to that entertained by the counsel for the railroad company, and for that reason the Supreme Court at Columbia set the verdict aside and ordered a new trial of this case according to the view of the law declared by the Supreme

Court, which governs this Court in all subsequent trials. Now, so much for the explanation of the law I am about to read to you now. The attorneys for the Nohrdens request me to state this to you as the law * * *

Eleventh. The statute of this State does not speak of pecuniary loss or injury, which might possibly tend to show that the injury for which the damages are allowed was confined to the deprivation of some legal claims susceptible of measurement by a pecuniary standard, but its language is much broader, and gives to the jury the right to award such damages, as they may think proportionate to the injury resulting from such death, and it is quite certain that the beneficiaries of the action may sustain injury by death of a relative over and above the loss of any legal claim which they may have upon such relative. All of those requests, I charge you, are proper.

(At this point counsel for plaintiff asked the Court to charge the jury that new trial was granted merely on the question of the measure of damages. His Honor said he would do so when he came to give his view of the law.)

The requests by the defendant are these * * *

Sixth. If the jury find that the statutory signals were not given, that does not make the company liable if Nohrden knew without such signals that the train was approaching, yet notwithstanding such knowledge he attempted to cross in the face of the train, or to board the train. And this important addition, not by myself, but by the counsel who proposed the request: "And the jury believe that only a grossly careless person would have so acted under the circumstances." You being the judges of that fact.

The seventh proposition I decline to charge. (The seventh proposition as submitted read as follows: "In order to prove that the failure to give signals contributed to the accident, the plaintiff must show that his intestate was not aware of the train's approach in time to have avoided the collision, for the only object of a signal is to give such notice. Unless, therefore, a preponderance of the evidence satisfies

you that the deceased did not know of the train's approach in time to have avoided the accident, you must find for the defendant.") * * *

The other questions of negligence here are not common law negligence, but what is called negligence for violation of statute. The legislature has prescribed how railroads shall cross crossings, and for this reason: there are railroads all over the country, and they are crossing public highways all over the country. A man has a right to travel on a public highway, and a railroad company, when it gets its charter, has a right to cross it. And it is the dictate of reason that when two persons use a crossing, each must use it with reference to the rights of the other. Now where the two cross is a road where the public has a right and where the railroad company has a right to be, and each must use it with reference to the right of the other to be there. A statute has prescribed how a railroad must cross a public highway; that is to say, in the language of the act I have read to you, they must, for so many yards before they cross it, ring their bell or blow their whistle, or, if within a less distance than that, to wit: so many rods as I have read, they must ring their bell or blow their whistle continuously—for what? In order to notify the public who use that place that they are coming to use it, and so avoid accident. That is the object of the act. Our Courts have gone on and considered that act to mean this: that if a railroad company fails to do that thing, fails to ring their bell or blow their whistle, and an accident occurs, the presumption is it occurred from the negligence of the railroad company, if it occurred on a crossing, because that provision was made to protect the rights of each party on a crossing. It is for you to say whether the railroad company did give these signals or not. If it did, it complied with the law; if it did not, it violated the law. Whether they did or not, is a matter for you. If it did not, and this boy was thereby killed, the law implies negligence to them, and the plaintiff is entitled to recover, unless, under the language of the statute, these things happened: unless

the boy was guilty of gross negligence, or unless he was vio-
lating the law.    Now what is gross negligence?    I have
defined to you what negligence is; negligence is the failure
of a man to come up to the standard of an ordinary man.
Now gross negligence is something short of that—it is an
act which an indifferent man would be guilty of; and if this
boy was guilty of not only a lack of care, but a considerable
lack of care, a greater lack of care, such a lack of care as
would make him grossly negligent, then that defeats his
action, under the very language of the statute.    Whether or
not he was guilty of that sort of conduct, is a question for
you.    You have heard the testimony.    Fix in your minds
what a negligent man and what a grossly negligent man is,
and if this boy was grossly negligent on that night, that
defeats his action.    Or, the statute goes on to say, if he was
violating the law.    Now, gentlemen, I am very candid to
say to you that I do not know exactly what that means.    If
he had violated a statute of the State, I would say that was a
violation of the law; or if he was violating the common law,
I would say that was a violation of the law; or if he was
guilty of a criminal act under the laws of the country, statute
or common, I would say whether that was a violation of the
law—that would be a violation of the law.    But it is not
necessary for me to decide in this case, and I am not going
to decide in this case questions that I am not requested to
decide, unless it is necessary to enlighten you.    And I have
not been requested to say whether or not the violation of a
city ordinance, if the boy did violate it, was such a violation
of the law as would defeat this action.    I am not going to do
it, for this reason, gentlemen, because, as I say, I have not
been requested to do it; and with these jury trials the law has
got to be so voluminous and so complex, and in so many
books, that a man fairly gets dizzy in its mazes; and where a
case is well fought on both sides, astute lawyers who know
the law, and have many months to prepare these cases, it is
practically impossible for a Circuit Judge on a hearing like
this to state the law in all its limitations; and a failure to

state it according to how it may be, would be an error of law,
and would entitle the party who appeals therefrom to a new
trial.    For that reason I am not going to look up questions
of law in this case which we are not obliged to decide.    That
is a direct and frank statement, so far as I am concerned.

Now, gentlemen, as to the matter of damages.    You
heard some little skirmishing between counsel and some oral
requests to me to make certain charges.    I charge you, in
the language of the statute and in the language of our Su-
preme Court, again avoiding any unnecessary difficulty, and
that is this : that when a jury comes to give damages, they
may give such damages as they think proportioned to the
injury.    To what injury?    To the death of the boy.    To
who?    To the party who brings the action, to wit : the father
of that boy.    Now, if I were to go to work to tell you what
sort of damages, to define what such damages were, I might
be in the same plight some Judges are who define a reason-
able doubt.    There is the language : "such damages," is
plain English, and you know what it means as well as I do.
That is what the statute says, and that is what it means. * * *

Now, as to the ground of this new trial : When this case
was tried before a jury before, the Circuit Judge charged
that the jury might give punitive damages, and the jury
found a verdict, and the Supreme Court says that was error,
that the jury could not give punitive damages.    Now, what
are punitive damages, gentlemen?    To illustrate it in a plain
way, it is this : if a man walks up to you in a public street,
in a public place, and breaks your nose with his fist, the actual
damage may not be very much to you; it might be repaired,
and you might be as well as you ever were before; but if he
does it in a spirit that is wilful, that is reckless, that is care-
less of the rights of his fellows; in other words, if he does it
in a mean spirit, what the law calls wilful, then you could sue
him, and recover not only for the broken nose, but for his
wilfulness, and the law gives what is called punitive dam-
ages; that is, smart money, not only to repair the damage
done to you, but to inflict a penalty by the lash upon his back.

That is the difference between the two. So the Supreme Court has held that in a case like this, where the statute gives the right to the relative of a dead man, you cannot give such a verdict as will punish the railroad company for wilful wrongdoing, but you must confine your verdict to such damages as may be proportioned to the injury; what is called in law, compensatory damages. * * *

The defendant served the following exceptions:

First. His Honor, the Circuit Judge, erred in refusing to charge the seventh request submitted by defendant upon the statutory signals, to wit: "Seventh. In order to prove that the failure to give signals contributed to the accident, the plaintiff must show that his intestate was not aware of the train's approach in time to have avoided the collision, for the only object of a signal is to give such notice. Unless, therefore, a preponderance of the evidence satisfies you that the deceased did not know of the train's approach in time to have avoided the accident, you must find for the defendant." It is submitted that defendant was entitled to this request, which embodies the principle laid down in *Barber* v. *The Railroad*, 34th S. C., at page 451, which holds: "The manifest object of requiring the signals is to give notice to persons crossing or wishing to cross a railroad track, in order that they may keep out of the way of an approaching train; but if they know of the approach of the train without any signal being given, where is the necessity for such signals, and how could it be said with any propriety that the failure to give them contributed in any way to the disaster? The fact that the train was running rapidly—from 20 to 25 miles an hour—is no evidence of negligence in the absence of other circumstances."

Second. We submit that a new trial is a trial *de novo,* and should be conducted, as far as possible, as if no prior trial had taken place; that references to the former verdict against the company, which was set aside, are not only unnecessary and prejudicial, but also improper and illegal, particularly in

a damage suit.    Therefore, we submit that his Honor, the
Circuit Judge, erred in charging as follows: "So that if I
failed to state the view of the law entertained by these
gentlemen, they would, therefore, have a remedy, to wit: by
appeal to the Supreme Court, and have the judgment re-
versed and a new trial ordered, and have the case tried ac-
cording to their view of the law.    That has been the case
in this case once heretofore.    This action was tried before a
former Circuit Judge, and he directed the jury on that trial
his view of the law, and that view was contrary to that enter-
tained by the counsel for the railroad company, and for that
reason the Supreme Court at Columbia set the verdict aside
and ordered a new trial of this case, according to the view of
the law declared by the Supreme Court, which governs this
Court in all subsequent trials."

Again, at the conclusion of the plaintiff's request, the
counsel for plaintiff asked the Court to charge the jury that
a new trial was granted merely on the question of the
measure of damages.    His Honor said he would do so when
he gave his view of the law, and later on in his charge he
used the following language: "Now as to the ground of this
new trial: When this case was tried before a jury before, the
Circuit Judge charged that the jury might give punitive
damages and the jury found a verdict, and the Supreme
Court says that was error; that the jury could not give puni-
tive damages."

Third.    We submit that it was error in his Honor, the Cir-
cuit Judge, to charge that the new trial in this case was
granted *merely* on the question of the measure of damages.
The record in the Appeal Court shows that there were a
number of exceptions to the charge upon the former trial,
which exceptions were not considered.    See *Nohrden* v. *N.
E. R. R.,* 54th S. C., page 498.    These exceptions, not
then considered, would have resulted in a new trial without
reference to the question of damages, if Judge Gage's view
of the law of negligence be correct; because the case on
appeal in this Court shows that these exceptions, not then

passed on, embraced requests which were refused by Judge
Buchanan upon the first trial, and yet charged as correct by
Judge Gage on the second trial.    We submit, therefore, that
it was unjust to charge that the only reason for setting aside
the former verdict was upon the question of damages, when
Judge Gage's own charge indicates that the former verdict
would have been set aside upon the other exceptions, not
then passed upon, without reference to the question of puni-
tive damages.    The natural and only inference to be drawn
by the jury from this error was that a former jury had
found a verdict under a proper charge, with the single excep-
tion of the mistake as to punitive damages, which was not
the case.                                                  '

Fourth.  Upon the question of damages, his Honor, the
Circuit Judge, charged as requested by plaintiff in his 11th
request, to wit: "Eleventh.  The statute of this State does
not speak of pecuniary loss or injury, which might possibly
tend to show that the injury for which the damages are
allowed was confined to the deprivation of some legal claims
susceptible of measurement by a pecuniary standard; but its
language is much broader, and gives to the jury the right to
award such damages as they may think proportionate to the
injury resulting from such death; and it is quite certain that
the beneficiaries of the action may sustain injury by death
of a relative over and above the loss of any legal claim which
they may have upon such relative."    And continuing upon
this question of damages, he charged: "Now, gentlemen, as
to the matter of damages: You heard some little skirmishing
between counsel, and some oral requests to me to make cer-
tain charges.    I charge you in the language of the statute,
and in the language of our Supreme Court, again avoiding
any unnecessary difficulty, and that is this: that when a jury
comes to give damages, they may give such damages as they
think proportioned to the injury. . To what injury?   To
the death of the boy.   To who?   To the party who brings
this action, to wit, the father of that boy.   Now, if I were to
go to work to tell you what sort of damages, to define what

such damages were, I might be in the same plight some Judges are who define a reasonable doubt. There is the language: 'such damage' is plain English, and you know what it means as well as I do. That is what the statute says, and that is what it means." We submit that his Honor, the Circuit Judge, erred in charging as above quoted, because: a. It is the constitutional duty of the Court to *declare the law;* and having undertaken to do so at the request of the plaintiff, by indicating what damages could be recovered, it was his duty to state the limitations of the law, and not submit the matter to the jury. b. Because it was the duty of the Court to consider and declare the law, and not simply charge in the language of the statute, and, after undertaking to explain the statute, it was error to say to the jury, "such damages is plain English, and you know what it means as well as I do." c. Because in so charging the Court submitted a question of law for the decision of the jury.

Fifth. We submit that facts are for the jury and law for the Court, and it is the duty of the Court to consider and construe the law, and his Honor, the Circuit Judge, therefore, erred in saying to the jury that he did not know exactly what the law meant, in that he charged as follows: "Or, the statute goes on to say, if he was violating the law. Now, gentlemen, I am very candid to say to you that I do not know exactly what that means. If he had violated a statute of the State, I would say that was a violation of the law; or if he was violating the common law, I would say that was a violation of the law; or if he was guilty of a criminal act under the laws of the country, statute or common, I would say whether that was a violation of the law—that would be a violation of the law. But it is not necessary for me to decide in this case, and I am not going to decide in this case questions that I am not requested to decide, unless it is necessary to enlighten you. And I have not been requested to say whether or not the violation of a city ordinance, if the boy did violate it, was such a violation of the law as would defeat this action. I am not going to do it, for this reason, gentle-

men, because, as I say, I have not been requested to do it; and with these jury trials the law has got to be so voluminous and so complex and in so many books, that a man fairly gets dizzy in its mazes; and where a case is well fought on both sides, astute lawyers who know the law and have many months to prepare these cases, it is practically impossible for a Circuit Judge on a hearing like this to state the law in all its limitations, and a failure to state it according to how it may be would be an error of law, and would entitle the party who appeals therefrom to a new trial. For that reason I am not going to look up questions of law in this case which we are not obliged to decide. That is a direct and frank statement, so far as I am concerned."

Sixth. It is submitted that it is error for the Court to refuse to construe and declare the law because "the law has got to be so voluminous and complex, and in so many books, that a man fairly gets dizzy in its mazes," and because "a failure to state the law in all its limitations," and because "a failure to state the law according to how it may be would be an error of law, and would entitle the party who appeals therefrom to a new trial." We submit that such refusal to charge the law applicable to the case is just as erroneous as to charge the law incorrectly. It was the duty of the Court to say whether or not a violation of the city ordinance was such a violation as would defeat the action. The third cause of action was based upon a part of said ordinance; the whole of said ordinance was in evidence without objection; the Circuit Judge in summing up the different causes of action includes this third cause as "negligence arising from violation of a city ordinance," and adds, "if you find the testimony in favor of plaintiff's claim does outweigh the testimony against it, find a verdict for plaintiff." A correct interpretation of the force and effect of this ordinance was in issue and necessary to "enlighten the jury," and his Honor's refusal to charge thereon was, we submit, error.

*Mr. W. Huger Fitzsimons,* for appellant, cites: *As to the*

7—59

*question of damages:* 53 S. C., 448; 37 S. C., 53; 168 U. S., 445; 151 U. S., 673; 80 N. W. R., 454; 4 B. & S., 396; 83 Eng. Com. Law R., 98; 54 S. C., 492; 47 S. C., 383; 27 S. C., 307. *Judge must declare the whole law applicable to the case:* Art. V., sec. 26, Con.; 47 S. C., 488; 57 S. C., 16; 49 S. C., 297; 51 S. C., 480; 49 S. C., 559; 52 S. C., 480. *Burden of proof that deceased did not hear train is on plaintiff:* 34 S. C., 451; 47 S. C., 381; 45 S. C., 181. *Error in Judge to refer to former trial:* 29 S. C., 303.

*Messrs. Legare & Holman* and *W. St. Julien Jervey,* contra, cites : *Burden of showing that deceased heard train on defendant:* 21 S. C., 470; 29 S. C., 318; 7 S. C., 402; 34 S. C., 450. *If special instruction is desired, it must be requested:* 2 S. C., 235; 15 S. C., 118; 16 S. C., 453; 18 S. C., 605; 19 S. C., 20; 24 S. C., 109; 26 S. C., 599; 32 S. C., 149; 33 S. C., 100; 34 S. C., 41, 311; 35 S. C., 16, 467; 36 S. C., 49; 39 S. C., 27, 33; 43 S. C., 205; 49 S. C., 285; 52 S. C., 452; 54 S. C., 192; 56 S. C., 126.

November 27, 1900.  The opinion of the Court was delivered by

MR. CHIEF JUSTICE MCIVER.    This is an action to recover damages for the alleged negligent killing of the plaintiff's intestate by one of the trains of the defendant company, on the 8th of September, 1897.   The case came on for trial before his Honor, Judge Gage, and a jury, and a verdict having been rendered in favor of the plaintiff, the defendant appeals from the judgment entered upon said verdict, basing his appeal upon the several exceptions set out in the record. As these exceptions impute error to the Circuit Judge in his charge to the jury, it is proper that the charge, as well as the exceptions thereto, should be set out by the reporter in his report of the case.

The first exception charges the Circuit Judge with error in refusing to charge defendant's seventh request, to wit: "Seventh. In order to prove that the failure to give signals

contributed to the accident, the plaintiff must show that his intestate was not aware of the train's approach in time to have avoided the collision, for the only object of a signal is to give such notice.    Unless, therefore, a preponderance of the evidence satisfies you that the deceased did not know of the train's approach in time to have avoided the accident, you must find for the defendant."    Inasmuch as the Circuit Judge, in response to defendant's sixth request, had instructed the jury that if the signals required by statute had not been given, that would not make the defendant liable, if the deceased knew without such signals, that the train was approaching, and yet, notwithstanding such knowledge, he attempted to cross in face of the train or to board the train; and the jury believe that only a grossly careless person would have so acted under the circumstances, it seems to us that the practical question raised by the first exception, is, whether the burden of proof is upon the plaintiff or upon the defendant, to show whether the deceased knew of the approach of the train in time to have avoided the collision.    By the express terms of the request, the burden of proof is placed upon the plaintiff; for the language used is, that *"the plaintiff must show* that his intestate was not aware of the train's approach in time to have avoided the collision." So that the practical inquiry is as to the burden of proof. We do not think that this burden is upon the plaintiff, for two reasons.    1st. Because it would be requiring the plaintiff, in violation of the general rule, to prove a negative.    2d. Because the knowledge of the deceased of the approach of the train in time to avoid a collision, is a matter of defense, to be proved by the defendant, and not to be disproved in advance by the plaintiff.    The statute (sec. 1692 of Rev. Stat.) provides that if a person is injured at a crossing by a collision with the engine or cars of a railroad corporation, "and it appears that the corporation neglected to give the signals required by this article (sec. 1685 of Rev. Stat.), and that such neglect contributed to the injury, the corporation shall be liable for all damages caused by the collision * * *

unless it is shown that, in addition to a mere want of ordinary care, the person injured * * * was at the time of the collision, guilty of gross or wilful negligence, or was acting in violation of the law, and that such gross or wilful negligence, or unlawful act, contributed to the injury." From this language, it is apparent that if a person brings an action for damages sustained by reason of a collision with a railroad train at a point where the railroad track "crosses any public highway or street or traveled place," and makes it appear that the railroad corporation neglected to give the signals required by statute, and that such neglect contributed to the injury, he is entitled to recover. But if it is shown that such person was at that time guilty of gross or wilful negligence, or was acting in violation of the law, and that such gross or wilful negligence, or unlawful act, contributed to the injury, then he cannot recover. It is clear that the plaintiff in such a case is not bound to negative by testimony such conduct on his part as would defeat his recovery, but that the burden of proof is upon the defendant to show such conduct on the part of the plaintiff as would defeat his right to recover. The case of *Barber* v. *Railroad Company,* 34 S. C., 444, cited by counsel for appellant, is not in point; for in that case there was no question as to the burden of proof, and could not have been, as it was stated at page 451, that while there was evidence of negligence on the part of the defendant in failing to give signals required by statute, yet it could not be said that the injury complained of was the result of such negligence, in face of the admitted fact, testified to both by the party injured and by his companion, that he knew not only that the train was approaching but was near at hand, before he attempted to cross the track. Then follows the quotation from that case incorporated in the exception, to the effect that the manifest object of the statute in requiring the signals to be given was to give notice of the approach of the train to persons crossing or desiring to cross the track, and if the plaintiff knew of the approach of the train, then such notice

was not necessary.  For the reasons thus indicated, there was no error in refusing the seventh request.  There is, however, another reason why the request should have been refused, and that is the omission of the important addition made to the sixth request, at the instance of counsel for plaintiff.  It does not follow necessarily that the fact that the person injured knew of the approach of the train in time to avoid the collision would imply gross negligence on his part, and hence the seventh request could not, even if otherwise unobjectional, have been granted without adding what was added to the sixth request.

The second and third exceptions, imputing error to the Circuit Judge in what he said to the jury in reference to the former trial of this case, and as to the disposition of the appeal from the judgment entered on such trial, may be considered together.  It is quite true, that when a new trial of a case is ordered by this Court, such trial is a trial *de novo;* so much so, that incompetent evidence received at the former trial without objection, which thereby became competent on *that trial,* cannot be received on a new trial, if objected to when offered (*Petrie* v. *R. R. Co.,* 29 S. C., at page 317), and must be conducted, as far as practicable, as if there had been no previous trial.  This, however, does not preclude the parties from agreeing to receive on the new trial either the whole or certain portions of the testimony taken at the previous trial; as seems to have been done in this case.  But it would be improper to allow any reference to the action of the former jury, calculated to influence the jury then trying the case.  Each jury must act upon its own responsibility and according to its own view of the testimony submitted to it entirely uninfluenced by the action of any other jury.  Indeed, it not infrequently happens that the testimony adduced on a new trial is very different from that offered on the original trial, and hence it would be manifestly improper for the jury on a new trial to allow itself to be influenced by the action of the former jury.  With this preliminary statement of what we understand to be the true rule

upon the subject, we proceed to inquire whether such rule
has been violated in this case.   The reference made by the
Circuit Judge to the former trial in the first quotation from
his charge, which is embraced in the second exception, was a
mere illustration of his statement to the jury, that if he failed
to state the law correctly the party injured thereby had his
remedy by appeal to the Supreme Court, and manifestly did
not violate the rule, for there is nothing there said calculated
to induce the jury to believe that they should pay any atten-
tion whatever to the action of the jury in the former trial.
The second quotation from the Judge's charge is nothing
more than a statement—and a correct statement—of the fact
that the Supreme Court had granted a new trial because of
error on the part of the Circuit Judge who presided at the
previous trial, in instructing the jury that they might give
punitive damages in a case of this kind.   There is no allu-
sion to the action of the former jury, except that they found
a verdict under an erroneous instruction as to the law.   It is
true, that the Circuit Judge, after disposing of the written
request to charge submitted by counsel for plaintiff, was
asked, by said counsel, to charge the jury that the new trial
"was granted merely on the question of the measure of dam-
ages," to which his Honor replied, that "he would do so
when he came to give his views of the law."   But, as matter
of fact, he never did charge the jury that the new trial was
granted *"merely* on the question of the measure of damages,"
but did charge the jury, as to this matter, in the language
found in the second quotation from the charge embraced in
the second exception.   In this, as we have said, there was
no error.   The third exception, which is rather an argument
than an exception, cannot, for that reason, be sustained ; nor
is the argument therein presented well founded.   It must be
kept in mind that the question presented by these two excep-
tions is whether Judge Gage said anything to the jury which
was calculated to induce them to believe that it had been de-
termined at the former trial that the plaintiff would have
been entitled to a verdict, but for the error on the part of the

Judge who presided at the former trial in instructing the jury that they might give punitive damages in a case of this kind. We do not see that there was anything in what Judge Gage did say to the jury which was calculated to induce any such belief. It does not appear that the jury were informed that there were any other exceptions to the charge of the Judge who presided at the former trial, except that in regard to punitive damages, and they certainly were not informed, and could not have been informed, whether such other exceptions (if any) were well or ill-founded; for this Court in its former decision (54 S. C., at page 498), had expressly declined to consider any of the other exceptions. We do not see, therefore, how it is possible that the jury could have drawn the inference "that a former jury had found a verdict, under a proper charge, with the single exception of the mistake as to punitive damages."

The fourth exception raises the point that the .Circuit Judge erred in refusing or failing to instruct the jury as to what was the nature of the damages which they were entitled to give, in the event they reached the conclusion that the plaintiff was entitled to a verdict; or, to state the point more precisely, in not instructing the jury what was the meaning of the following language, used in sec. 2316 of the Rev. Stat., to wit: "And in every such action the jury may give such damages as they may think proportioned to the injury resulting from such death to the parties respectively for whom and for whose benefit such action shall be brought." In the first place, it will be observed that there was no request that the Circuit Judge should explain to the jury what the meaning of the language used in that quotation from the statute was, or to define any of the terms used therein. He had laid before the jury the terms of the statute under which the action was brought, and had, as requested by plaintiff's eleventh request, instructed the jury in the language contained in the first quotation embraced in the fourth exception, which is taken substantially from the opinion of this Court in Petrie's case (29 S. C., at

page 320), and had in another part of his charge instructed the jury that they could not give punitive or vindictive, but only *compensatory* damages proportionate to the injury resulting from the death of plaintiff's intestate to the parties for whose benefit the action was brought, and in still another portion of his charge had used the language found in the second quotation embraced in the fourth exception, which seems to form the basis of appellant's claim of error. Now, in view of the charge as thus stated, which it seems to us gave to the jury the law applicable to the case, if the appellant desired a more extended charge, it was its duty to embody its propositions in the form of requests to charge. See *State v. Kendall,* 54 S. C., where, at page 195, Mr. Justice Gary uses the following language: "The tenth exception imputes error to the Circuit Judge in not charging the proposition of law therein stated. His Honor substantially charged the law applicable to the case, and if the appellant desired a more extended charge, it was his duty to embody his propositions in the form of a request to charge. This exception is overruled." In this case, the Circuit Judge having charged what law was in his opinion applicable to the case, and having given to the jury the construction which had been placed upon the statute by this Court in the quotation from Petrie's case, the appellant was bound, if a more extended charge was desired, to submit a request to charge, which was not done. For this reason the fourth exception must be overruled. But there is another reason why this exception cannot be sustained, and that is that the exception contains no statement of the specific error or omission complained of; what particular instruction should have been given to the jury is not pointed out. The statement in the exception that the Circuit Judge erred in not declaring the law as required by the mandatory terms of the Constitution, which it is conceded does not mean *all the law upon the subject* under consideration, but the law applicable to the case made by the testimony (*Norris v. Clinkscales,* 47 S. C., at page 521), is clearly too general and

insufficient, as it is not stated on what points the Judge failed to declare the law, or what "limitations of the law" he omitted to explain.

But even if we are permitted to resort to the argument for the purpose of ascertaining what were the points upon which it is alleged that the Judge omitted to explain the law, we suppose that the error complained of was in the omission to instruct the jury that they are not allowed to take into consideration, in estimating the amount of damages, the wounded feelings of the persons for whose benefit the action is brought, growing out of the death of their relative.    But, as we have said, there was no request for any such instruction in this case as there was in Petrie's case, where the late Judge Norton was requested and did so charge the jury.    But we do not understand that it was decided in that case that the wounded feelings of the beneficiaries at the loss of their relative could or could not be considered by the jury as one of the elements in making their estimate of the amount of damages.    For while Judge Norton did so charge the jury in that case, yet, as there was no exception to that portion of his charge, this Court did not, and could not, properly consider whether there was any error in that portion of his charge.    All that was really decided in that case, so far as this particular matter was concerned, was that the jury were not confined, in making their estimate of the amount of damages, to the loss of any *legal* claim which the beneficiaries may have had upon their deceased relative, but, in the language of the statute, "the jury may give such damages as they may think proportioned to the injury resulting from such death to the parties, respectively, for whom, and for whose benefit, such action shall be brought." This is manifest from the fact that the exception there considered made the point that, as the children of the deceased, for whose benefit the action was brought, were all adults, and had been settled off to themselves several years before their mother was killed by the railroad train, they could not have any *legal* claim on the deceased for their support.   As to

this point, the Supreme Court used the following language: "It is contended, however, that unless the children had some *legal* claim on the deceased for support, no damages could be recovered for their benefit, as the children of deceased were all adults, living to themselves, they could not possibly have any such claim. This view is based upon the idea that the 'injury' spoken of in the statute, means only the deprivation of a *legal right*. This, it seems to us, is a narrow view of the statute, and, on the contrary, its language repels any such view;" and the Court, after considering the terms of the statute, proceeds to say: "As it is quite certain that the beneficiaries of the action may sustain injury by the death of a relative, over and above the loss of any *legal* claim which they may have upon such relative, it follows that the view contended for cannot be sustained." It is quite clear, therefore, that all that was decided in Petrie's case so far as the particular matter now under consideration is concerned, was that the fact that the beneficiaries have no *legal* claim on their deceased relative, does not deprive them of the right to recover damages in a case like this; and that it did not decide the question, which, as we understand, the appellant desires to make by the fourth exception, to wit: whether, in a case like this, the jury are at liberty, in forming their estimate of the amount of damages, to take into consideration the wounded feelings of the beneficiaries resulting from the death of their relative. Nor, so far as we are informed, is there any case in this State which distinctly decides that question, though the very recent case of *Mason* v. *Southern Railway Co.,* 58 S. C., 70, does seem to imply that such an element may be taken into consideration by the jury in estimating the amount of damages; for in that case the person killed was an infant about sixteen months old. But the decision was based upon Petrie's case, and the case of *Strother* v. *Railroad Co.,* 47 S. C., 375, in which the question was whether the Circuit Judge had erred in refusing to instruct the jury: "That the measure of damages in statutory actions for injuries causing deaths is compensation for the pecuniary

loss to the survivors from the death of the deceased." Held, that there was no error, basing the decision upon the terms of the statute and the decision in Petrie's case. The decisions elsewhere seem to be conflicting. In 8 Ency. of Law, at page 926 of the second edition, we find the following language, which is said to be an expression of the general rule: "Unless the statute expressly so provides, nothing can be allowed to the plaintiff, by way of damages, as a solutium, to compensate him for his wounded feelings or for the mental anguish the death of his relative may have caused him, and proof of such mental suffering is not admissible on the question of damages." But in the very next paragraph, "a modified doctrine," as it is termed, is stated as follows: "In some jurisdictions, however, where the legislature has provided that the jury shall assess such damages as they deem fair and just with reference to the injuries resulting from the death, thus omitting to limit the damages to the 'pecuniary' injury, it is held that the jury may consider the loss of society caused from the death, and the comfort which a parent would have derived from rearing his child." It seems to us that what is stated above as the modified doctrine, is much more in conformity to the terms of our statute, and the trend of our decisions construing the statute than the above stated general rule. By the express terms of our statute, as we have seen, the jury are authorized to give "such damages as they may think proportioned to the injury resulting from such death to the parties, respectively, for whom, and for whose benefit, such action shall be brought," and this Court has construed the statute, in Petrie's case and in Strother's case, recognized and followed in Mason's case, *supra,* to mean, not merely the *pecuniary* injury which may be sustained by the loss of any *legal* claim which they may have had upon the deceased for their support, or for the services of the deceased; and in the case of *Garrick* v. *Railroad Company,* 53 S. C., 448, recognized and followed in the former decision in the present case, has held that the language of the statute necessarily implies that compensatory, and not punitive, damages may be

awarded.     So that when the Circuit Judge laid before the jury the terms of the statute, and instructed them how that statute had been construed by this Court, he did all that was necessary; and there was no necessity for him to go further and explain to the jury what was meant by the words "such damages," for, in fact, these words are, practically, defined by the language of the statute itself, as construed by the cases just cited, to mean whatever damages the jury may think are a proper compensation to the parties for whose benefit the action is brought, for the injury, whether arising from the pecuniary loss or otherwise, sustained by such parties by reason of the death of their relative.     If it should be said, as has been argued in this case, that the view which we have adopted would leave the jury entirely untrammeled by any rule, and would permit them to indulge in "wild and extravagant" notions as to what is a proper compensation to the parties for the injury sustained, two answers can be made. In the first place, they are not, as we have seen, entirely untrammeled, for they cannot give vindictive damages, and are limited to such an amount as they may think will afford a proper compensation for the injury sustained by the parties for whose benefit the action is brought.     And in the second place, if the law-making power has seen fit to place no other limit upon the jury than what they may think proportioned to the injury sustained, we do not see by what authority this Court can undertake to prescribe any additional limitation. It is no more than what is allowed in every action for a tort sounding in damages.     The only remedy provided by law against capricious, wild or extravagant verdicts, is by a motion, addressed to the Circuit Court, for a new trial upon the ground of excessive damages, and our books of report show that such remedy has, not unfrequently, been resorted to in just such cases as the present.     The fourth exception must, therefore, be overruled.

The fifth and sixth exceptions, based as they are upon the passage from the charge which is quoted in the fifth exception, may be considered together.     These exceptions

are, practically, disposed of by what we have said in considering the fourth exception. But it may be proper to notice the particular matter complained of in these two exceptions, viz: whether it was error to refuse to charge the jury that a violation of the city ordinance therein referred to by the deceased, would be such a violation of law as would defeat this action, because he had not been requested to do so. While it is true that the Circuit Judge was not requested to charge as there indicated, yet it is equally true that the Circuit Judge did charge defendant's thirteenth request, with certain words very properly added by the Judge. That request reads as follows: "Section 609 of the revised ordinances makes it unlawful for any person, not employed by railroad companies, to get on or off their cars or locomotives while the same are in motion," to which the Judge added these words, "within the corporate limits of the city," to which additional words no exception was, or could be, taken, as they are taken from the words of the ordinance. Now, as the jury were instructed that the statute provides that if a person is injured by a collision with the engine or cars of a railroad company at a crossing, and it appears that the railroad company had neglected to give the signals prescribed by the statute, such railroad company shall be liable for all damages caused by the collision, unless it is shown that the person injured was, at the time, "acting in violation of the law * * * and that such * * * unlawful act contributed to the injury;" and when, as we have seen, the jury were likewise instructed that the city ordinance made it "unlawful" for any person, not employed by the railroad company, to get on or off the cars or locomotives while the same were in motion, within the corporate limits of the city, it seems to us that the Circuit Judge declared the law applicable to the case; and if the appellant desired a more extended charge, a request to that effect was necessary. The fifth and sixth exceptions must also be overruled.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.